1

2

3

4

5

6

7

8                      UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   ASKIA ASHANTI,                           No.  2:  14-cv-1644 JAM KJN P

12            Plaintiff,

13      v.                                     ORDER AND FINDINGS AND
                                               RECOMMENDATIONS
14   BARACK OBAMA, et al.,

15            Defendants.

16

17   I.  Introduction

18         Plaintiff is a state prisoner, proceeding without counsel, with a civil rights action pursuant

19   to 42 U.S.C. § 1983.  Pending before the court is defendant Martinez's motion for summary

20   judgment.  (ECF No. 80.)  Defendant argues that plaintiff failed to exhaust administrative

21   remedies and that she is entitled to summary judgment as to the merits of plaintiff's claims.

22         For the reasons stated herein, the undersigned recommends that defendant's summary

23   judgment motion be granted as to the merits of plaintiff's claims.

24         On July 26, 2016, plaintiff filed a motion for an extension of time to file his opposition to

25   defendants' summary judgment motion.  (ECF No. 89.)  On August 1, 2016, plaintiff filed his

26   opposition.  (ECF No. 90.)  Good cause appearing, plaintiff's motion for an extension of time is

27   granted, and plaintiff's opposition is deemed timely filed.

28   ////

1

1  II.  <u>Legal Standard for Summary Judgment</u>

2          Summary judgment is appropriate when it is demonstrated that the standard set forth in

3  Federal Rule of Civil procedure 56 is met.  "The court shall grant summary judgment if the

4  movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

5  judgment as a matter of law."  Fed. R. Civ. P. 56(a).

6          Under summary judgment practice, the moving party always bears the initial

7  responsibility of informing the district court of the basis for its motion, and identifying those

8  portions of "the pleadings, depositions, answers to interrogatories, and admissions on file,

9  together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue

10  of material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed.

11  R. Civ. P. 56(c)).

12          "Where the nonmoving party bears the burden of proof at trial, the moving party need

13  only prove that there is an absence of evidence to support the non-moving party's case."  <u>Nursing</u>

14  <u>Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.)</u>, 627 F.3d 376,

15  387 (9th Cir. 2010) (citing <u>Celotex Corp.</u>, 477 U.S. at 325); <u>see also</u> Fed. R. Civ. P. 56 advisory

16  committee's notes to 2010 amendments (recognizing that "a party who does not have the trial

17  burden of production may rely on a showing that a party who does have the trial burden cannot

18  produce admissible evidence to carry its burden as to the fact").  Indeed, summary judgment

19  should be entered, after adequate time for discovery and upon motion, against a party who fails to

20  make a showing sufficient to establish the existence of an element essential to that party's case,

21  and on which that party will bear the burden of proof at trial.  <u>Celotex Corp.</u>, 477 U.S. at 322.

22  "[A] complete failure of proof concerning an essential element of the nonmoving party's case

23  necessarily renders all other facts immaterial."  <u>Id.</u> at 323.

24          Consequently, if the moving party meets its initial responsibility, the burden then shifts to

25  the opposing party to establish that a genuine issue as to any material fact actually exists.  <u>See</u>

26  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  In attempting to

27  establish the existence of such a factual dispute, the opposing party may not rely upon the

28  allegations or denials of its pleadings, but is required to tender evidence of specific facts in the

1    form of affidavits, and/or admissible discovery material in support of its contention that such a

2    dispute exists.  See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11.  The opposing party

3    must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

4    of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

5    (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

6    1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return

7    a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436

8    (9th Cir. 1987), overruled in part on other grounds, Hollinger v. Titan Capital Corp., 914 F.2d

9    1564, 1575 (9th Cir. 1990).

10        In the endeavor to establish the existence of a factual dispute, the opposing party need not

11   establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

12   dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

13   trial."  T.W. Elec. Serv., 809 F.2d at 630.  Thus, the "purpose of summary judgment is to 'pierce

14   the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

15   Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963

16   amendments).

17        In resolving a summary judgment motion, the court examines the pleadings, depositions,

18   answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R.

19   Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson, 477 U.S. at

20   255.  All reasonable inferences that may be drawn from the facts placed before the court must be

21   drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.  Nevertheless, inferences

22   are not drawn out of the air, and it is the opposing party's obligation to produce a factual

23   predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F.

24   Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to

25   demonstrate a genuine issue, the opposing party "must do more than simply show that there is

26   some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could

27   not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for

28   trial.'"  Matsushita, 475 U.S. at 586 (citation omitted).

1    By contemporaneous notice provided on May 22, 2015 (ECF No. 36), plaintiff was

2    advised of the requirements for opposing a motion brought pursuant to Rule 56 of the Federal

3    Rules of Civil Procedure.  See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc);

4    Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

5    III.  Plaintiff's Claims

6    This action is proceeding on the third amended complaint as to defendant Martinez.[1]

7    (ECF No. 29.)  All relevant events occurred at the California Health Care Facility ("CHCF").

8    Plaintiff alleges that on May 7, 2014, defendant Martinez, who worked in the mailroom, opened

9    an envelope addressed to plaintiff from his brother.  (Id. at 11.)  Defendant Martinez discovered a

10    small, plastic baggie containing a white powdery substance.  (Id.)  Defendant Martinez contacted

11    former defendant Heilbrun.  (Id.)

12    On May 13, 2014, the California Department of Justice mailed a report to former

13    defendant Heilbrun identifying the white powdery substance as methamphetamine.  (Id.)  On June

14    30, 2014, plaintiff was charged with a prison disciplinary for introduction of a controlled

15    substance into a prison.  (Id.)  In August or September 2014, the prison disciplinary charges were

16    dismissed.  (Id. at 13.)

17    In July 2014, the charges were referred to the San Joaquin County District Attorney's

18    Office for prosecution.  (Id. at 29.)  In August 2014, the San Joaquin County District Attorney's

19    Office declined to prosecute plaintiff.  (Id. at 13.)

20    Plaintiff alleges that defendant Martinez planted the methamphetamine in retaliation for

21    his legal activities.  (Id. at 15.)  Plaintiff alleges that while housed at CHCF, he has had

22    approximately 100 or more outgoing and incoming pieces of legal mail.  (Id. at 16.)  In addition,

23    plaintiff has filed numerous administrative grievances.  (Id. at 17.)

24    ////

25    ////

26    ////

27    ────────────────

28    [1]  Plaintiff's claims against defendants Barroga and Heibrun were dismissed based on plaintiff's failure to exhaust administrative remedies.  (ECF Nos. 46, 60.)

IV.  Failure to Exhaust Administrative Remedies

     A.  Legal Standard

     The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . , or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002).

     Proper exhaustion of available remedies is mandatory, Booth v. Churner, 532 U.S. 731, 741 (2001), and "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules[.]"  Woodford v. Ngo, 548 U.S. 81, 90 (2006).  The Supreme Court has also cautioned against reading futility or other exceptions into the statutory exhaustion requirement.  See Booth, 532 U.S. at 741 n.6.  Moreover, because proper exhaustion is necessary, a prisoner cannot satisfy the PLRA exhaustion requirement by filing an untimely or otherwise procedurally defective administrative grievance or appeal.  See Woodford, 548 U.S. at 90-93. "[T]o properly exhaust administrative remedies prisoners 'must complete the administrative review process in accordance with the applicable procedural rules,' [] - rules that are defined not by the PLRA, but by the prison grievance process itself." Jones v. Bock, 549 U.S. 199, 218 (2007) (quoting Woodford, 548 U.S. at 88).  See also Marella v. Terhune, 568 F.3d 1024, 1027 (9th Cir. 2009) ("The California prison system's requirements 'define the boundaries of proper exhaustion.'") (quoting Jones, 549 U.S. at 218).

     In California, prisoners may appeal "any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a). On January 28, 2011, California prison regulations governing inmate grievances were revised. Cal. Code Regs. tit. 15, § 3084.7.  Now inmates in California proceed through three levels of appeal to exhaust the appeal process:  (1) formal written appeal on a CDC 602 inmate appeal

1   form, (2) second level appeal to the institution head or designee, and (3) third level appeal to the

2   Director of the California Department of Corrections and Rehabilitation ("CDCR").  Cal. Code

3   Regs. tit. 15, § 3084.7.  Under specific circumstances, the first level review may be bypassed.  Id.

4   The third level of review constitutes the decision of the Secretary of the CDCR and exhausts a

5   prisoner's administrative remedies.  See id. § 3084.7(d)(3).  Since 2008, medical appeals have

6   been processed at the third level by the Office of Third Level Appeals for the California

7   Correctional Health Care Services.  A California prisoner is required to submit an inmate appeal

8   at the appropriate level and proceed to the highest level of review available to him.  Butler v.

9   Adams, 397 F.3d 1181, 1183 (9th Cir. 2005); Bennett v. King, 293 F.3d 1096, 1098 (9th Cir.

10  2002).  Moreover, since the 2011 revision, in submitting a grievance, an inmate is required to "list

11  all staff members involved and shall describe their involvement in the issue."  Cal. Code Regs. tit.

12  15, § 3084.2(3).  Further, the inmate must "state all facts known and available to him/her

13  regarding the issue being appealed at the time," and he or she must "describe the specific issue

14  under appeal and the relief requested."  Cal. Code Regs. tit. 15, §§ 3084.2(a)(4).  An inmate now

15  has thirty calendar days to submit his or her appeal from the occurrence of the event or decision

16  being appealed, or "upon first having knowledge of the action or decision being appealed."  Cal.

17  Code Regs. tit. 15, § 3084.8(b).

18          Failure to exhaust is "an affirmative defense the defendant must plead and prove."  Bock,

19  549 U.S. at 204, 216.  In Albino, the Ninth Circuit agreed with the underlying panel's decision[2]

20  "that the burdens outlined in Hilao v. Estate of Marcos, 103 F.3d 767, 778 n.5 (9th Cir. 1996),

21  should provide the template for the burdens here."  Albino v. Baca, 747 F.3d 1162, 1172 (9th Cir.

22  2014) (en banc).  A defendant need only show "that there was an available administrative remedy,

23  and that the prisoner did not exhaust that available remedy."  Albino, 747 F.3d at 1172.  Once the

24  defense meets its burden, the burden shifts to the plaintiff to show that the administrative

25  remedies were unavailable.  See Albino, 697 F.3d at 1030-31.

26  _____

27  [2]  See Albino v. Baca, 697 F.3d 1023, 1031 (9th Cir. 2012).  The three judge panel noted that "[a]
    defendant's burden of establishing an inmate's failure to exhaust is very low."  Id. at 1031.
    Relevant evidence includes statutes, regulations, and other official directives that explain the
28  scope of the administrative review process.  Id. at 1032.

1        A prisoner may be excused from complying with the PLRA's exhaustion requirement if

2   he establishes that the existing administrative remedies were effectively unavailable to him.  See

3   Albino, 747 F.3d at 1172-73.  When an inmate's administrative grievance is improperly rejected

4   on procedural grounds, exhaustion may be excused as effectively unavailable.  Sapp v. Kimbrell,

5   623 F.3d 813, 823 (9th Cir. 2010); see also Nunez v. Duncan, 591 F.3d 1217, 1224-26 (9th Cir.

6   2010) (warden's mistake rendered prisoner's administrative remedies "effectively unavailable");

7   Ward v. Chavez, 678 F.3d 1042, 1045 (9th Cir. 2012) (exhaustion excused where futile); Brown

8   v. Valoff, 422 F.3d 926, 940 (9th Cir. 2005) (plaintiff not required to proceed to third level where

9   appeal granted at second level and no further relief was available).

10       Where a prison system's grievance procedures do not specify the requisite level of detail

11  for inmate appeals, Sapp, 623 F.3d at 824, a grievance satisfies the administrative exhaustion

12  requirement if it "alerts the prison to the nature of the wrong for which redress is sought."  Griffin

13  v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009).  "A grievance need not include legal terminology

14  or legal theories unless they are in some way needed to provide notice of the harm being grieved.

15  A grievance also need not contain every fact necessary to prove each element of an eventual legal

16  claim.  The primary purpose of a grievance is to alert the prison to a problem and facilitate its

17  resolution, not to lay groundwork for litigation."  Griffin, 557 F.3d at 1120.

18       B.  Analysis

19       Defendants previously filed a motion to dismiss, pursuant to Federal Rule of Civil

20  Procedure 12(b)(6), arguing that plaintiff's failure to exhaust administrative remedies was plain

21  from the face of his third amended complaint.  (ECF No. 41.)  The court granted the motion to

22  dismiss as to defendants Barroga and Heilbrun, but denied the motion to dismiss as to defendant

23  Martinez.  (ECF No. 60.)  The court's analysis of the motion to dismiss is relevant to the pending

24  motion for summary judgment.  Accordingly, the undersigned herein sets forth the background to

25  the court's analysis of the motion to dismiss.

26       In the third amended complaint, plaintiff alleged that on July 4, 2014, he filed an

27  administrative grievance, i.e., 602, regarding the alleged retaliation.  (ECF No. 29 at 8.)  Plaintiff

28  alleged that he received no response to this grievance.  (Id. at 28-29.)  Therefore, plaintiff argued

7

1  that the failure of prison officials to respond to his grievance excused administrative exhaustion.

2  　　　　The undersigned recommended that the motion to dismiss as to defendants Barroga and

3  Heilbrun be granted because, assuming prison officials failed to process plaintiff's July 4, 2014

4  grievance, this grievance did not contain information from which prison officials could have

5  reasonably inferred that these defendants were involved in the alleged retaliation.  (ECF No. 46 at

6  9.)  The undersigned recommended that the motion to dismiss as to defendant Martinez be denied

7  on grounds that:  1) the failure of prison officials to process the July 4, 2014 grievance may

8  excuse exhaustion; and 2) the July 4, 2014 grievance put prison officials on notice that plaintiff

9  was complaining about defendant Martinez.  (Id.)  The Honorable John A. Mendez adopted these

10  findings and recommendations.  (ECF No. 60.)

11  　　　　In the pending motion for summary judgment, defendant Martinez argues that plaintiff has

12  no evidence that prison officials interfered with his July 4, 2014 grievance.  Defendant cites the

13  declaration of the CHCF Appeals Coordinator who states that CHCF has no record of an

14  administrative appeal submitted by plaintiff for processing between June 30, 2014, and March 1,

15  2016, related to his claim that mailroom staff improperly placed contraband into his incoming

16  mail on May 7, 2014.  (ECF No. 80-6 at 3.)  Defendant argues that even if plaintiff actually

17  mailed his appeal on July 4, 2014, he has nothing other than bare conclusory allegations that

18  CHCF officials refused to respond to this appeal, or that they received it in the first place.

19  Defendant argues that without some sort of evidence that prison officials actually interfered with

20  his ability to file an appeal, plaintiff cannot show that administrative remedies were unavailable to

21  him.

22  　　　　At his deposition, plaintiff testified regarding his alleged attempts to exhaust

23  administrative remedies.[3]  Plaintiff testified that he submitted a Form 22, i.e., Request for

24  _____

25  [3]  In his opposition, plaintiff argues that the court should not consider his deposition transcript
because he was not given an opportunity to review it.  (ECF No. 90 at 4-5.)  Federal Rule of Civil

26  Procedure 30(e)(1) provides that on request by the deponent before the deposition is completed,  a
deponent must be allowed an opportunity to review the deposition transcript.  The undersigned

27  has reviewed plaintiff's deposition transcript and finds no request by plaintiff to review the
transcript.  Accordingly, plaintiff's objection to the court's consideration of the transcript on

28  grounds that he was not given an opportunity to review it is without merit.

1  Interview Form, regarding the alleged retaliation, with his 602 grievance on July 4, 2014.

2  (Plaintiff's Deposition at 27.)  He received no response to the Form 22 or the 602 grievance

3  submitted on July 4, 2014.  (Id. at 22, 27.)  Plaintiff submitted a second Form 22 on September 1,

4  2014, regarding the alleged retaliation.  (Id. at 27.)  Plaintiff received no response to his second

5  Form 22.  (Id.)  Plaintiff then submitted a grievance to the third level of review in November

6  2014 asking officials at the Director's Level of Review to intervene and direct the CHCF appeals

7  coordinator to respond to his grievance.  (Id.)

8         At his deposition, plaintiff testified regarding the CHCF appeals office:

9              My 21 years now, I've never seen a prison have so many
               complaints against the appeal's office.  I'm sure you guys are doing
10             an investigation later on to contact the Prison Law Office.

11             There's been a myriad of complaints against the appeals
               coordinators here.  I've never seen a prison have so many different
12             appeal's coordinators in the short period of time, two years I've
               been there.  They probably had somewhere between five to seven
13             appeal's coordinators. I mean, generally, they last at least five to ten
               years in the post.
14

15  (Id. at 29.)

16         The undersigned observes that in his declaration submitted in support of defendant's

17  summary judgment motion, CHCF Appeals Coordinator Infante does not state how long he has

18  held that position.  (ECF No. 80-6.)  In his opposition, plaintiff alleges that CHCF Appeals

19  Coordinator Infante was not the Appeals Coordinator "during the time in question."  (ECF No. 90

20  at 7.)

21         Attached as an exhibit to plaintiff's opposition is a copy of the 602 plaintiff alleges he

22  submitted on July 4, 2014. (ECF No. 93 at 70-71.)  Also attached are the Form 22s plaintiff

23  claims he submitted on July 4, 2014, and September 1, 2014.  (Id. at 68, 69.)  Additionally,

24  attached is the letter plaintiff wrote to the Director's Level of Review on November 9, 2014,

25  stating that he filed a grievance in July 2014 that had not been responded to.  (Id. at 67.)  In this

26  letter, plaintiff requested that the Director's Level Office direct the CHCF Administration to

27  adjudicate his grievance.  (Id.)

28  ////

1    As observed by defendant, plaintiff's 602 and Form 22s are not date stamped and they do

2    not contain any other indication that they were viewed by the CHCF Appeals Office.

3    Plaintiff also provided the November 25, 2014 response by the Office of Appeals to his

4    November 9, 2014 letter.  (<u>Id.</u> at 66.)  The response states,

> In your correspondence dated November 9, 2014 you have asked
> about the status of an appeal, but have given no Institutional or
> Third Level log number for us to identify the appeal in question.
> Please provide a log number for us to identify the appeal in
> question.  Please provide a log number for the appeal in question so
> that this office may provide status information relative to that issue.
> Keep in mind, you must inquire with the Appeals Coordinator at
> your institution regarding the status of appeals not yet completed
> through the Second Level of Review.

10   (<u>Id.</u>)

11   The undersigned agrees with defendant that conclusory allegations regarding prison

12   officials' failure to process administrative remedies are not sufficient to defeat a summary

13   judgment motion.  <u>See, e.g.</u>, <u>Taylor v. List</u>, 880 F.2d 1040, 1045 (9th Cir. 1989) (conclusory

14   allegations, unsupported by evidence are insufficient to defeat a motion for summary judgment);

15   <u>see also</u> <u>Villarimo v. Aloha Island Air, Inc.</u>, 281 F.3d 1054, 1061 (9th Cir. 2002) (no "genuine

16   issue" of fact if only evidence presented is the "uncorroborated and self-serving" testimony of the

17   opposing party).

18   However, in the instant case, plaintiff's allegations regarding his attempts to exhaust

19   administrative remedies are not conclusory.  Plaintiff has provided evidence and testimony

20   regarding his attempts to exhaust administrative remedies.  The undersigned has considered the

21   lack of notation on plaintiff's 602 and Form 22s indicating that they were received and/or

22   reviewed by prison officials.  However, plaintiff's November 2014 letter to the Appeals Office

23   was clearly sent and received.  Plaintiff's testimony regarding ongoing problems with the CHCF

24   Appeals Office, and turnover by CHCF Appeals' Coordinators, lends some credence to his

25   claims, assuming that testimony can be substantiated.  Accordingly, the undersigned finds that

26   plaintiff's evidence and testimony are sufficient to create a disputed fact regarding whether prison

27   officials failed to process his grievance and Form 22s.

28   ////

1    If plaintiff could demonstrate that prison officials failed to process his grievances, the

2   undersigned would find that plaintiff's administrative exhaustion is excused.  An evidentiary

3   hearing possibly would be required to explore this issue further.  See Albino v. Baca, 747 F.3d

4   1162, 1171 (9th Cir. 2014) (court shall hold evidentiary hearing to decide disputed factual

5   questions relevant to administrative exhaustion).   However, because the undersigned herein finds

6   that defendant Martinez should be granted summary judgment as to the merits of plaintiff's

7   claims, no evidentiary hearing is required.  Accordingly, the issue of administrative exhaustion

8   may remain unresolved.

9   IV.   Merits

10        A.   Legal Standard for Retaliation

11        Within the prison context, a viable claim of First Amendment retaliation entails five basic

12   elements:  (1) An assertion that a state actor took some adverse action against an inmate (2)

13   because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's

14   exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate

15   correctional goal.  Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted).

16   Accord Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995) (prisoner suing prison officials under

17   Section 1983 for retaliation must allege that he was retaliated against for exercising his

18   constitutional rights and that the retaliatory action did not advance legitimate penological goals,

19   such as preserving institutional order and discipline).

20        B.   Analysis

21        Defendant does not dispute that methamphetamine was found in an envelope addressed to

22   plaintiff.  Defendant also does not appear to dispute that the related disciplinary charges against

23   plaintiff were dismissed and that criminal charges were not pursued.  Defendant moves for

24   summary judgment on the grounds that there is no evidence that she planted the drugs in

25   plaintiff's mail.  Defendant also argues that there is no evidence that she acted with a retaliatory

26   motive.  Defendant also argues that her reporting the discovery of possible contraband promoted

27   the legitimate correctional goal of preventing the introduction of contraband into prisons.

28   ////

11

In her declaration submitted in support of the summary judgment motion, defendant Martinez states, in relevant part,

> 1.   I have been employed by the California Department of Corrections (CDCR) since March 17, 2014, as an Office Assistant at the California Health Care Facility (CHCF), located in Stockton, California.   I am the Defendant in this action.   I am personally aware of the matters set forth in this declaration, and if called upon to testify to these matters, I could and would do so.
>
> 2.  On May 7, 2014, I was searching incoming mail pursuant to my duties when I discovered a small plastic baggie containing an unknown crystallized substance in a letter addressed to Plaintiff Askia Ashanti.   I immediately informed my supervisor, who advised me to place the entire letter into a manila envelope and contact the Investigative Services Unit at CHCF.   Based on my supervisor's instructions, I wrote a memorandum explaining my discovery and sent it to ISU.   A true and correct copy of the memorandum I wrote regarding my discovery is attached to this declaration as Exhibit A.
>
> 3.  On May 7, 2014, I did not know Plaintiff had engaged in any litigation, and I had never personally met Plaintiff.   I did not place the bag I discovered on May 7, 2014, into Plaintiff's incoming mail, and I do not know who did so.   When I reported my finding to ISU, I did so because I was instructed to do so by my supervisor.   I did not act out of any desire to retaliate against Plaintiff for his filing of prison grievances, lawsuits, or any other activity plaintiff may have taken.

(ECF No. 80-5 at 1-2.)

Defendant also argues that at his deposition, plaintiff admitted that he had no evidence that the drugs were planted in his mail to retaliate against him.  Defendant states that plaintiff testified that he did not know if defendant Martinez was the person who put the contraband in the envelope.

The undersigned herein summarizes plaintiff's relevant deposition testimony.  At his deposition, plaintiff testified that he did not know if defendant Martinez was the person who put the baggy containing the methamphetamine into the envelope, but that she was named as a defendant because she was the person who discovered it.  (Plaintiff's deposition at 48.)  As observed by defendant, plaintiff testified that he had never met defendant Martinez.  (Id.) Plaintiff testified that he had never filed a grievance against defendant Martinez prior to May 7, 2014, the date the methamphetamine was discovered.  (Id. at 49.)  Plaintiff also testified that he

12

1   had never filed a lawsuit against defendant Martinez prior to May 7, 2014.  (Id.)

2          At his deposition, plaintiff was asked why he thought the baggie containing

3   methamphetamine was placed in his mail as a result of retaliation for his legal activities.  (Id. at

4   54-55.)  In response, plaintiff testified, "No, it's my belief.  It may be other reasons.  Only that

5   person can answer that… It's just my belief that because of my vexatious and litigious conduct

6   that I was targeted."  (Id. at 55.)

7          The undersigned has reviewed the four, separately filed exhibit appendixes filed by

8   plaintiff in support of his opposition.  (ECF Nos. 91-94.)  None of plaintiff's exhibits filed in

9   support of the opposition contain any evidence that defendant Martinez planted the

10  methamphetamine in plaintiff's mail.

11         Plaintiff has presented no evidence that defendant Martinez planted the methamphetamine

12  that was found in the envelope sent to him by his brother.  Plaintiff's speculation that defendant

13  Martinez must have planted the methamphetamine, as she was the person who first reported it, is

14  insufficient to create a disputed issue of material fact.

15         Accordingly, based on the undisputed statements in defendant Martinez's declaration, the

16  undersigned finds that there is no evidence that defendant Martinez planted the methamphetamine

17  found in the envelope.  Therefore, defendant Martinez should be granted summary judgment on

18  grounds that she did not take the alleged adverse action against plaintiff.

19         Plaintiff does not argue that defendant's reporting of the methamphetamine, even if she

20  did not plant it, constituted retaliation.  However, in an abundance of caution, the undersigned

21  finds that defendant's reporting of her discovery of the methamphetamine, even if she did not

22  plant it, advanced the legitimate correctional goal of preventing the introduction of contraband

23  into prisons.  Therefore, defendant Martinez's reporting of the methamphetamine alone did not

24  constitute retaliation.

25         Accordingly, IT IS HEREBY ORDERED that plaintiff's motion for an extension of time

26  to file his opposition (ECF No. 89) is granted; and

27  ////

28  ////

1  IT IS HEREBY RECOMMENDED that defendant's summary judgment motion (ECF

2  No. 80) be granted as to the merits of plaintiff's retaliation claim.

3  These findings and recommendations are submitted to the United States District Judge

4  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

5  after being served with these findings and recommendations, any party may file written

6  objections with the court and serve a copy on all parties.  Such a document should be captioned

7  "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

8  objections shall be filed and served within fourteen days after service of the objections.  The

9  parties are advised that failure to file objections within the specified time may waive the right to

10  appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

11  Dated:  September 7, 2016

13  KENDALL J. NEWMAN
   UNITED STATES MAGISTRATE JUDGE

16  Ash1644.sj

14